John M. Morrison
Anne E. Sherwood
MORRISON SHERWOOD WILSON
DEOLA PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, Montana 59624-0557
(406) 442-3261
(406) 443-7294 facsimile
john@mswdlaw.com
anne@mswdlaw.com

Jaime MacNaughton
Chief Legal for the Office of the
Commissioner of Political Practices
PO Box 202401
1209 Eighth Ave
Helena, MT 59620-2401
Telephone:  (406) 444-2942
Facsimile: (406) 444-1643
jmacnaughton@mt.gov

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| MONTANA CITIZENS FOR RIGHT TO WORK, a Montana incidental political committee,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY MANGAN, IN HIS OFFICIAL CAPACITY AS MONTANA COMMISSIONER OF POLITICAL PRACTICES,<br><br>Defendant. | Case No. CV-21-68-H-DWM<br><br><br>**DEFENDANT COMMISSIONER'S SUPPLEMENTAL BRIEF RE:** *ARIZONA RIGHT TO LIFE V. BAYLESS* |

The present case involves a First Amendment challenge to the Montana Clean Campaign Act (CCA), Mont. Code Ann. § 13-35-402. The parties' cross motions for summary judgment and Defendant's motion to dismiss were argued before this Court on November 30, 2021. Following the argument, this Court issued a text order directing each of the parties to file a supplemental brief

addressing the relevance and/or implications of *Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002 (9th Cir. 2003).

Defendant Jeffrey Mangan, Montana Commissioner of Political Practices (the Commissioner), respectfully submits this brief in response to the Court's Order. In summary, it shows that, while superficially similar, *Bayless* is a prior restraint decision that is inapposite to the case at bar.

## PERTINENT FACTS

In 1993, the Arizona legislature passed election reform measures that included a restriction on political advertising by independent expenditure groups. The law in question required that political committees making independent expenditures, "expressly advocating election or defeat of a clearly identified candidate," within ten days before an election:

> send by certified mail a copy of the campaign literature or advertisement to each candidate named or otherwise referred to in the literature or advertisement twenty- four hours before depositing it at the post office for mailing, twenty-four hours before submitting it to a telecommunications system for broadcast or twenty-four hours before submitting it to a newspaper for printing.

*Bayless*, 320 F.3d at 1005, citing, Ariz. Rev. Stat. § 16-971(A).

Arizona Right to Life Political Action Committee (ARLPAC) challenged the law arguing that it impermissibly burdened their First Amendment right to speak to and educate the public about candidate's positions. The district court denied

2

ARLPAC's request for injunction and declaratory judgment. The Ninth Circuit reversed and held the statute unconstitutional on grounds that do not apply here.

## DISCUSSION

1. ***Bayless* was a prior restraint case; the present case is not.**

   a. ***Bayless* turned on the fact that Arizona's statute "prohibited," "delayed," and "hogtied" speech for 24 hours or more.**

Unlike the Montana CCA, the Arizona statute at issue in *Bayless* prohibited speech for 24 hours during the final ten days of the campaign. The 24-hour waiting period was the focus and basis for the Court's ruling that the statute was unconstitutional. At the outset, the Court explained that "the Arizona legislature passed a statute requiring *advance notice* before distribution of certain political literature and advertising." *Bayless*, 320 F.3d at 1004. (Italics supplied). The Court observed further: "Specifically, within ten days before an election, a political action committee advocating the election or defeat of any candidate must mail a copy of the communication to the candidate at least twenty-four hours in advance." *Id*. Because the statute imposed "limitations on the timing of political advertising," the statute imposed "a severe burden on political speech" and thereby violated the First Amendment. *Id*. at 1005. (Underscoring supplied)

The Ninth Circuit panel in *Bayless* "weigh[ed] the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden," and noted: "Regulations imposing severe burdens on

plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id*. at 1007-1008. In *Bayless*, the statute's burden *was severe* because it imposed "a prior restraint on PACs through a twenty-four hour notification requirement." *Id*. (Underscoring supplied.)[1] Further explicating the problem caused by this severe suppression of speech, the Court explained:

> Rather than allowing free-flowing, uninhibited speech in the last days before the election,… § 16-917(A) imposes a twenty-four hour waiting period before distribution of communications to the public. This "built-in delay mechanism" prevents the timely exercise of First Amendment rights and prohibits spontaneous political expression. *Grossman v. City of Portland*, 33 F.3d 1200, 1206 (9th Cir. 1994) (quoting *Cmty. for Creative Non-Violence v. Turner*, 714 F. Supp. 29, 33(D.D.C. 1989). Restricting spontaneous political expression places a severe burden on political speech because, as the Supreme Court has observed, "timing is of the essence in politics . . . and when an event occurs, it is often necessary to have one's voice heard promptly, if it is to be considered at all." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 163, 22 L. Ed. 2d 162, 89 S. Ct. 935(1969) (Harlan, J., concurring); *Rosen v. Port of Portland*, 641 F.2d 1243, 1247-50(9th Cir. 1981) (holding one-day advance notice requirement for demonstrating or distributing leaflets in airport imposes a severe burden on speech and constitutes a prior restraint). To suggest that the waiting period is minimal ignores the reality of breakneck political campaigning and the importance of getting the message out in a timely, or, in some cases, even instantaneous fashion.

*Id.* at 1008. (Underscoring supplied.)

---

[1] "[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976).

The Court also noted that the statute did "more than delay communication. It also effectively prohibits speech in situations where the communication was not, or could not have been, prepared far enough in advance of the election for the PAC to comply with the notice provision." *Id*. In other words, in the last day of the election, the PAC would be unable to speak at all, even in response to an attack on it. Because the statute required the notice to be sent by certified mail, the Court noted that the gag period could be even longer. Since there is no mail on Sunday, the notice letter could not be sent until Monday and the PAC's speech would be prohibited until Tuesday. That would effectively ban PAC speech the last two days before a Tuesday election. The Court illustrated the timing problem with examples in which the PAC would essentially be deprived of its opportunity to respond. Similarly, if an attack was launched against a PAC via the instant internet, the certified mail prerequisite meant that the "PAC would be hogtied in its ability to respond." *Id.* at 1009.

The *Bayless* Court also cited the Supreme Court's decision in *Mills v. Alabama*, 384 U.S. 214, 216 (1966), in which state law prohibited campaigning on election day. The law was unconstitutional because it left "people free to hurl their campaign charges up to the last minute of the day before election [but] then [went] on to make it a crime to answer those 'last minute' charges on election day, the

5

only time they can be effectively answered." *Bayless*, 320 F. 3d at 1011, *quoting Mills*, 384 U.S. at 220.

The *Bayless* panel concluded the Arizona statute imposed a "pernicious burden on speech in that it delays, and sometimes even prevents, political speech on the basis of content." *Id*. at 1013. (Underscoring supplied).

> **b.    The *Bayless* Court and ARTLPAC noted the First Amendment problem there would be eliminated by the simultaneous electronic notice approach that is in the Montana CCA.**

The *Bayless* Court found that the Arizona law was also not narrowly tailored to the purpose of providing notice because the required certified mail could be deliberately delayed by Sunday mailing or mailing from out of state, such that it took more than 24 hours to reach the candidate while allowing attacks to be launched in the meantime. The Court—and ARLPAC—suggested that this tailoring problem *and the burden on speech* could both be resolved by allowing notice by electronic means at the time the ad is released:

> As ARLPAC points out, Arizona could eliminate this problem, while also reducing the statute's restraint on spontaneous speech, by "allowing the communication to be submitted or mailed at the same time that a copy is provided to the candidate by immediate delivery methods such as facsimile, e-mail, telephone, or hand delivery." By restricting PACs from providing notice via the most expeditious means available, § 16-917(A) places a greater burden on speech than is necessary to simply provide notice to candidates.
>
> *Bayless*, 320 F.3d at 1012.

6

Thus, the *Bayless* Court--and the plaintiff in that case--implicitly approved the approach Montana would take a few years later, suggesting that such a statute would be free of the Constitutional infirmities that doomed the Arizona law.

### c. The Montana CCA requires no delay and no prohibition.

The *Bayless* Court was especially concerned with the effect that a statutorily mandated 24-hour delay would have on a timely response to speech during the final days of the campaign given "the reality of breakneck political campaigning and the importance of getting the message out in a timely, or, in some cases, even instantaneous fashion." *Id*. at 1008. To paraphrase the *Bayless* Court, the Montana CCA *eliminates* this problem. Under Montana's law, the speaker does not need to delay their communication at all. Section 13-35-402(3) of the Montana law specifies the time requirements for the notice.

> (a) at the time the material is published or broadcast or disseminated to the public;
> (b) if the material is disseminated by direct mail, on the date of the postmark; or
> (c) if the material is prepared and disseminated by hand, on the day the material is first being made available to the general public.

The statute contains no requirement that the candidate or political committee provide advance notice nor that they delay their communication in any way. This is confirmed by the Commissioner's interpretation that the law does not require the notice/disclosure to be emailed or otherwise delivered until just before midnight on

7

the day the political communication is disseminated or postmarked. See, e.g., *Gibson v. Montana Democratic Party*, COPP-2014-CFP-062, at 5.[2]

## 2. The Arizona statute discriminated against independent expenditure PACs, while Montana's CCA applies to all candidates and political committees.

A secondary concern of the *Bayless* Court was the Arizona law's "imposition of restrictions on PACs that are not levied on candidates and other participants in the political process." *Bayless*, 320 F. 3d at 1009.[3] Thus, candidates could launch attacks regarding an opponent's relationship with a PAC, but the PAC could not respond. *Id*. In contrast, the Montana CCA applies equally to candidates and political committees and prevents no one from responding to anyone. Mont. Code. Ann. § 13-35-402(1). As discussed at hearing, the only groups not subject to the Act are those excluded by the definition of electioneering communications, which has been upheld against First Amendment challenge by the Ninth Circuit. *N.A. for Gun Rights, Inc. v. Mangan,* 933 F.3d 1102 (9th Cir. 2019).

---

[2] https://politicalpractices.mt.gov/_docs/2recentdecisions/GibsonvMDPDecision.pdf (Finding an email at 11:28pm on the day of mailing complied with the statute.)

[3] The Court expressed its concerns about discrimination and content-based regulation only in the context of the advanced notice mandate: "These reasons lead us to conclude that *the advance notice requirement of § 16-917(A) severely burdens speech* by restricting spontaneous expression, by regulating speech on the basis of content, and by discriminating against PACs." *Bayless*, 320 F. 3d at 1010. (Italics supplied)

**3.     The Arizona law in *Bayless* was a content-based restriction because it delayed certain kinds of speech, while the Montana CCA does not prohibit, limit, delay, suppress or prefer any kind of speech.**

The *Bayless* Court found that the Arizona law was also subject to strict scrutiny as a content-based regulation because it applied only to independent expenditures that "expressly advocate the election or defeat of a clearly identified candidate." *Bayless*, 320 F. 3d at 1009. *Bayless* is distinguishable on this point as well for several reasons. First, the Montana CCA applies to all communications of a candidate or political committee (except for endorsements, which are necessarily exempted as part of the statute's required narrow tailoring.) Second, as discussed in prior briefing, all the cases cited by MCRTW regarding content-based restrictions on speech involved limiting, banning, prohibiting, or suppressing certain kinds of expression. The Arizona law in *Bayless* fits neatly into that strand of cases because it prohibited speech for 24 hours during the waiting period. Indeed, the Court describes the content-based restriction in the context of the advance notice requirement.  *Supra*, n. 3. We have seen no cases in which a mere disclosure requirement, with no impediment to speech, was found to be a content-based *restriction* triggering strict scrutiny. Third, while the *Bayless* Court suggested that *Buckley's* lower scrutiny disclosure standards only applied to financial disclosure laws (*Bayless*, 320 F. 3d at 1013), the Supreme Court and Ninth Circuit in subsequent decisions have made clear that exacting scrutiny is the

9

appropriate standard for reviewing not only non-financial campaign disclosure laws[4] but also for a state's "entire disclosure regime"[5] and for disclosure laws outside the political campaign realm.[6] Thus, to the extent *Bayless* found that exacting scrutiny only applies to financial disclosures, it is no longer good law.[7]

In sum, *Bayless* does not support MCRTW's First Amendment challenge. If anything, it further suggests that the Montana CCA is constitutionally sound.

DATED this 6th day of December 2021.

By /s/ John M. Morrison
JOHN M. MORRISON
ANNE E. SHERWOOD
MORRISON, SHERWOOD, WILSON & DEOLA, PLLP

---

[4] *John Doe No. 1 v. Reed*, 561 U.S. 186, 196, (2010) (Applying exacting scrutiny to Washington's law requiring disclosure of ballot issue petitions because it was "not a prohibition on speech, but instead a *disclosure* requirement.")

[5] *NAGR*, 933 F. 3d at 1117.

[6] *Americans for Prosperity Foundation v. Bonita*, 141 S. Ct. 2373, 2383-2384 (2021).

[7] Even before *Citizens United*, *Reed, NAGR, Yamada*, and *Brumsickle* (full cites in Doc. 9), the *Bayless* panel's view of content-based regulation was not gaining traction. *See*, e.g., *Prete v. Bradbury*, 438 F.3d 949, 968, n.25 (9th Cir. 2006) (Rejecting application of *Bayless's* analysis to a law that regulated certain campaign petitions and not others. The Court explained: "The 'principal inquiry' in determining whether a regulation is content-neutral or content-based 'is whether the government has adopted the regulation because of agreement or disagreement with the message it conveys.' [Citations omitted] 'Laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based.' *Id*. Measure 26 does not regulate what can be said in an initiative or referendum petition, nor does it adopt or reject any particular subject that can be raised in a petition. Therefore, Measure 26 is not a content-based restriction and strict scrutiny does not apply."

CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(d)(2)(E) of the Montana Federal Local Rules of Procedure, I certify that the foregoing document is printed with a proportionately spaced Times New Roman text typeface of 14 points; is double spaced; and the word count calculated by Microsoft Word 2018 for Mac is 2,360 excluding caption, tables, and certificate of compliance.

DATED this 6th day of December 2021.

By /s/ John M. Morrison
JOHN M. MORRISON
ANNE E. SHERWOOD
MORRISON, SHERWOOD, WILSON & DEOLA, PLLP

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2021, the foregoing document was filed via the Court's CM/ECF filing system.

DATED this 6th day of December 2021

MORRISON, SHERWOOD, WILSON & DEOLA, PLLP

By: /s/ John M. Morrison
John M. Morrison
Anne Sherwood
MORRISON, SHERWOOD, WILSON & DEOLA, PLLP
*Attorneys For Plaintiffs-Appellees*