Matthew G. Monforton  (Montana Bar # 5245)
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718
Telephone:  (406) 570-2949
matthewmonforton@yahoo.com

Quentin M. Rhoades
Rhoades, Siefert & Erickson, PLLC
430 Ryman Street
Missoula, MT 59802
(406) 721-9700
qmr@montanalawyer.com

Attorneys for Plaintiff Montana Citizens For Right to Work

### UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| MONTANA CITIZENS FOR RIGHT TO WORK, a Montana incidental political committee, | )<br>)<br>) Case No. CV-21-68-H-DWM<br>) |
| Plaintiff,<br>v. | )<br>) **PLAINTIFF'S SUPPLEMENTAL**<br>) **BRIEF**<br>) |
| JEFFREY MANGAN, in his official capacity as Montana Commissioner of Political Practices, | )<br>)<br>)<br>) |
| Defendant. | )<br>)<br>) |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................1

ARGUMENT ..............................................................................................................1

I.  **The Ninth Circuit's Analysis in *Bayless* Concerning the Severity of The Burden Imposed by Arizona's Statute Was Dicta** ................................1

II. **The Constitutional Defects of the Arizona Statute Mirror Those of Montana's Clean Campaign Act** ..................................................................4

    A. *Bayless* **Applied Strict Scrutiny and This Court Should As Well** ......4

    B. **The State Has No Legitimate Interest in Deterring Negative Ads or Increasing Responses From Opposing Candidates** .................7

    C. *Bayless* **Supports Montana Citizens' Arguments Concerning Underinclusiveness and Equal Protection** ............................................8

CONCLUSION .......................................................................................................10

# **TABLE OF AUTHORITIES**

*American Freedom Defense Initiative v. King County*,
    904 F.3d 1126 (9th Cir. 2018) ............................................................................6

*Arizona Right to Life Political Action Committee v. Bayless*,
    320 F.3d 1002 (9th Cir. 2003) ................................................................*passim*

*Buckley v. American Constitutional Law Foundation, Inc.*,
    525 U.S. 182 (1999)..............................................................................................3

*Burdick v. Takushi*,
    504 U.S. 428 (1992)......................................................................................... 2-3

*Davison v. Loudoun County Board of Supervisors*,
    267 F. Supp. 3d 702 (E.D. Va. 2017) ...................................................................6

*Lerman v. Board of Elections*,
    232 F.3d 135 (2d Cir. 2000) .................................................................................3

*Leventhal v. Vista Unified School Dist.*,
    973 F. Supp. 2d 951 (S.D. Cal. 1997)..................................................................6

*Lind v. Grimmer*,
    30 F.3d 1115 (9th Cir. 1994) ................................................................................6

*McIntyre v. Ohio Election Comm'n*,
    514 U.S. 334 (1995)..............................................................................................2

*Pest Committee v. Miller*,
    626 F.3d 1097 (9th Cir. 2010) .......................................................................3, 4

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
    487 U.S. 781 (1988)..............................................................................................5

*Rosenberger v. Rector & Visitors of Univ. Virginia*,
    515 U.S. 819 (1995)..............................................................................................6

*Timmons v. Twin Cities Area New Party*,
    520 U.S. 351 (1997)......................................................................................... 2-3

*Yamada v. Snipes*,
 786 F.3d 1182 (9th Cir. 2015) ............................................................................6

# INTRODUCTION

Pursuant to the Court's order, Plaintiff hereby submits its supplemental brief concerning the applicability of *Arizona Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002 (9th Cir. 2003). The Ninth Circuit in *Bayless* invalidated an Arizona statute that coupled (1) a requirement by political committees to give candidates 24-hour notice before publishing negative ads during the last ten days of the campaign with (2) a 24-hour ban on publishing the ads. As shown below, *Bayless* further undermines Defendant's already weak case.

# ARGUMENT

## I.  The Ninth Circuit's Analysis in *Bayless* Concerning the Severity of the Burden Imposed by Arizona's Statute Was Dicta

The Ninth Circuit's opinion in *Bayless* reinforces several points that Plaintiff has previously argued to this Court. That said, the *Bayless* court took an unnecessary detour by first analyzing the severity of the burden imposed upon political speech by Arizona's statute. *Bayless*, 320 F.3d at 1007-1010. In doing so, the court conflated two different rules the Supreme Court uses in analyzing First Amendment challenges in election-related cases. Such challenges generally fall into two categories: (1) challenges to state laws that "control the mechanics of the electoral process" and (2) challenges to the state's "regulation of pure speech."

*McIntyre v. Ohio Election Comm'n*, 514 U.S. 334, 345 (1995). Each category is governed by different precedents.

As the Supreme Court noted with regard to laws governing election mechanics, "[e]ach provision of a code, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992). Subjecting every such law to strict scrutiny would "tie the hands of States seeking to assure that elections are operated equitably and efficiently." *Id.* Courts thus apply "a more flexible standard" by first determining whether a regulation applicable to the election process severely burdens First and Fourteenth Amendment rights. *Id.* at 434. Those that do are subject to strict scrutiny. *Id.* For those that impose only "reasonable, nondiscriminatory restrictions" upon constitutional rights, however, "the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.*

The Court in *Burdick* upheld Hawaii's prohibition on write-in voting because it did not severely burden constitutional rights. *Id.* at 434-37. The Court later applied *Burdick* to Minnesota's prohibition against the same candidate appearing on the ballot for more than one political party. *Timmons v. Twin Cities*

2

*Area New Party*, 520 U.S. 351 (1997). That ban did not impose severe burdens, either, and was therefore upheld. *Id.* at 358-59.

The *Burdick-Timmons* line of cases does not apply to laws regulating core political speech. Instead, "[w]hen core political speech is at issue, we have ordinarily applied strict scrutiny without first determining that the State's law severely burdens speech." *Pest Committee v. Miller*, 626 F.3d 1097, 1105-1106 (9th Cir. 2010), quoting *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring); see also *Lerman v. Board of Elections*, 232 F.3d 135, 146 (2d Cir. 2000) (citing Justice Thomas' opinion in *Buckley* in holding that "restrictions on core political speech so plainly impose a 'severe burden' that application of strict scrutiny clearly will be necessary.").

The court in *Bayless* began its review of the Arizona statute by applying the rule in *Burdick* and *Timmons* to determine the severity of the burden imposed by the statute. *Bayless*, 320 F.3d at 1007-1008. This was entirely unnecessary because the Arizona statute was not a regulation governing the mechanics of the election process but instead focused upon pure speech. Accordingly, this portion of *Bayless* should be treated as dicta.

Defendant emphasizes throughout his brief the severity of the burden imposed by the Arizona statute. Doc. 19. This point is irrelevant. Like the Arizona statute, the Montana Clean Campaign Act does not control any of the

mechanics of the election process but instead regulates pure political speech. Therefore, this Court need not analyze the severity of the burden imposed by either the Arizona statute or the Montana Act because "[w]hen core political speech is at issue, we have ordinarily applied strict scrutiny without first determining that the State's law severely burdens speech." *Pest Committee*, 626 F.2d at 1105.

## II. The Constitutional Defects of the Arizona Statute Mirror Those of Montana's Clean Campaign Act

Much of the *Bayless* opinion consists of the court applying strict scrutiny to the Arizona statute. *Bayless*, 320 F.3d at 1010-1014. That portion of the opinion is equally applicable to this case and bolsters Plaintiff's arguments for striking down the Montana Clean Campaign Act.

### A. *Bayless* Applied Strict Scrutiny and This Court Should As Well

The *Bayless* court held that the Arizona statute was subject to strict scrutiny. *Bayless*, 320 F.3d at 1010-1014. This Court should also apply strict scrutiny. Like the Arizona statute, the Montana Clean Campaign Act burdens the publication of negative political ads published during the last 10 days of an election cycle. Most notably, the Act requires candidates and political committees to electronically transmit copies of negative mailers to opposing candidates on the same day that the mailers are postmarked. Mont. Code Ann. § 13-35-402(3)(b). This guarantees that

opposing candidates will have advance notice of the mailers – as much as several days[1] – before the mailers arrive in voters' mailboxes, thereby diminishing the mailers' value as a campaign tool.

During oral argument, Defendant suggested for the first time that the Act's provision concerning advance notice of mailers (Mont. Code Ann. § 13-35-402(3)(b)) could be severed. His argument should be deemed waived.

Even if the Court were to consider severing the mailer provision, however, this would not fix the Act. It would become vague as to when speakers like Plaintiff would be required to notify opposing candidates of negative mailers. More importantly, the Act would still require compelled speech and therefore still be unconstitutional. *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796-97 (1988). The Act would still force candidates and political committees to separately communicate with opposing candidates when communicating with voters. Such compelled speech goes well beyond "provid[ing] information to the electorate about who is speaking," which has been the courts' rationale for requiring disclosure to the electorate. *Yamada v. Snipes*, 786 F.3d 1182, 1197 (9th Cir. 2015).

---

[1] Federal law presumes that mail takes three (3) days to be delivered. Fed. R. Civ. P. 6(d).

Unlike the Arizona statue, which applied to both positive and negative ads, the Montana Clean Campaign Act exempts endorsements and therefore discriminates by viewpoint. See, *e.g.*, *American Freedom Defense Initiative v. King County*, 904 F.3d 1126, 1130-31 (9th Cir. 2018) (public transit agency's ban on any ad that "demeans or disparages" individuals was viewpoint discriminatory); *Davison v. Loudoun County Board of Supervisors*, 267 F. Supp. 3d 702, 717 (E.D. Va. 2017) ("the suppression of critical commentary regarding elected officials is the quintessential form of viewpoint discrimination"); *Leventhal v. Vista Unified School Dist.*, 973 F. Supp. 2d 951, 960 (S.D. Cal. 1997) (school district rule prohibiting criticism of employees during board meetings "allows expression of two points of view (laudatory and neutral) while prohibiting a different point of view (negatively critical) on a particular subject matter" and was thus "a classic form of viewpoint discrimination"). The application of strict scrutiny to this case is therefore all the more appropriate. *Rosenberger v. Rector & Visitors of Univ. Virginia*, 515 U.S. 819, 829 (1995) (when "the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant.").

### B. The State Has No Legitimate Interest in Deterring Negative Ads or Increasing Responses From Opposing Candidates

Arizona authorities in *Bayless* failed to identify any compelling or even important interest that was advanced by suppressing negative campaign advertising. The Ninth Circuit found no merit to Arizona's claim that its statute was justified to "deter last minute negative campaigning by those whom the candidates cannot control." *Bayless*, 320 F.3d at 1013. On the contrary, "negative campaigning may be distasteful to some politicians and voters; it is nonetheless fundamental in First Amendment jurisprudence that it is not the function of government to promote speech it deems more valuable and to suppress speech it deems less valuable." *Id*. at 1014, quoting *Lind v. Grimmer*, 30 F.3d 1115, 1119 (9th Cir. 1994). Thus, Arizona "has not established a legitimate interest in suppressing negative political speech from PACs, even in the interest of promoting speech from candidates." *Id*. at 1014.

In both its briefs as well as during oral argument last week, Defendant struggled to articulate *any* compelling or even legitimate interest that is supposedly advanced by the Montana Clean Campaign Act. He insists that the Act furthers the ability of opposing candidates to respond to negative ads published late in the campaign. But the Ninth Circuit expressly rejected Arizona's argument that advance notice to opposing candidates "affords candidates an opportunity to respond to last-minute negative 'hit-pieces' that may confuse or misinform voters."

7

*Bayless*, 320 F.3d at 1010. The argument hasn't improved with age. Nor has Defendant offered a shred of evidence to support it.

The *Bayless* court also expressly rejected Arizona's anti-corruption rational because the statute "does not regulate any financial aspects of a PAC's participation in the political process." *Id.* at 1013. Thus, Arizona "failed to offer any evidence of a connection between PACs' unrelated ability to place political advertisement in the waning days of a campaign and corruption or the appearance of corruption in the electoral process…." *Id.* Defendant's anti-corruption arguments in this case should also be rejected.

Defendant's failure to articulate any interest advanced by the Montana Clean Campaign Act supports the response undersigned counsel provided when the Court asked during oral argument how the Act could be "rebuilt" by the Legislature. A speech regulation lacking any governmental interest to support it should not be rebuilt anymore than a barn built on a swamp should be rebuilt after collapsing. Without any compelling or even legitimate governmental interest supporting it, the Act cannot be salvaged by this Court and should not be revived by the Legislature.

### C. *Bayless* Supports Montana Citizens' Arguments Concerning Underinclusiveness and Equal Protection

The Ninth Circuit held that the Arizona statute was fatally underinclusive because it applied to PACs while leaving candidates and individuals "free to place

8

as many negative, misleading or confusing advertisements as they like." *Bayless*, 320 F.3d at 1012-13. Montana's Clean Campaign Act likewise leaves individuals, the press, corporations, and unions free to place as many negative, misleading or confusing advertisements as they like. This bolsters both Plaintiff's underinclusiveness argument as well as its equal protection claim.

The court in *Bayless* also noted another manner in which the Arizona statute was underinclusive – Arizona voters could cast their ballots by voting absentee a month before the election – and 35% of them did so in the 2000 election. *Bayless*, 320 F.3d at 1012. Accordingly, "the notice requirement may have a diminished impact on a significant percentage of the voters." *Id.*

Montana voters can also cast their ballots via absentee voting a month before Election Day. And that percentage is much higher than Arizona's – in the 2018 general election, over 73% of ballots cast in Montana were by absentee vote.[2]

| | | 2018 Federal General: Number of Absentee Ballots Sent, Accepted, Percentage of Votes Cast, Percentage of Registered Voters | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | Montana Secretary of State sosmt.gov • soselections@mt.gov | | | | | |
| | Registered Voters | All Absentees Sent | All Absentees Accepted | Percentage Absentees Accepted of Number Sent | Total of All Votes Cast | Percentage of Absentees Accepted of Total Votes Cast | Percentage of Absentees Accepted of Total Registered Voters |
| TOTALS: | 711,844 | 433,909 | 372,400 | 85.82% | 509,213 | 73.13% | 52.31% |
| | Registered Voters | All Absentees Sent | All Absentees Accepted | Percentage Absentees Accepted of Number Sent | Total of All Votes Cast | Percentage of Absentees Accepted of Total Votes Cast | Percentage of Absentees Accepted of Total Registered Voters |
| | | | | | | | *Updated March 12, 2019* |

---

[2] The chart from which this figure is derived is a screen shot obtained by visiting the "Absentee turnout" link at the Montana Secretary of State's website, <sosmt.gov/elections/results/>. This percentage would be even higher for the 2020 general election because COVID-related restrictions resulted in nearly 100% of votes being cast via U.S. Mail.

Thus, a considerable number of Montana voters cast their ballots well before the 10-day window in which the Clean Campaign Act applies. Those voters are subject to negative ads without opposing candidates being provided with notice. This underinclusiveness further undermines Defendant's case.

## CONCLUSION

For all of the foregoing reasons, Plaintiff Montana Citizens For Right To Work respectfully requests this Court deny Defendant's motion for summary judgment in its entirety and grant Plaintiff's motion for summary judgment, declare the "Clean Campaign" Act unconstitutional, and enjoin its enforcement.

DATED: December 6, 2021

Respectfully submitted,
/s/ Matthew G. Monforton
Matthew G. Monforton
Monforton Law Offices, PLLC
32 Kelly Court
Bozeman, Montana 59718

Quentin M. Rhoades
Rhoades, Siefert & Erickson, PLLC
430 Ryman Street
Missoula, MT 59802

Attorneys for Plaintiff

## CERTIFICATE OF COMPLIANCE WITH L.R. 7.1(d)(2)(E)

I hereby certify that this document, excluding caption, tables and certificate of compliance, contains 2520 words, as determined by the word processing software used to prepare this document, specifically Microsoft Word 2007.

DATED: December 6, 2021           Respectfully submitted

                                  /s/ Matthew G. Monforton
                                  Matthew G. Monforton
                                  Attorney for Plaintiff